IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ALISHIA KAY TURNER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 16-157-N |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Social Security Commissioner | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) Plaintiff, Alishia Kay Turner ("Tuner" or "Plaintiff") seeks judicial review of an adverse social security ruling denying claims for disability insurance benefits and Supplemental Security Income (SSI) (Docs. 1, 18). With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 21, 22). Oral argument was heard on December 1, 2016. After considering the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

PROCEDURAL BACKGROUND

Plaintiff protectively applied for disability insurance benefits and SSI on July 26, 2013, asserting a disability onset date of March 27, 2013. (Tr. 229-234). At the time of the administrative hearing, Plaintiff was forty-four years old, had completed the twelfth grade and had previous work experience as a quality care technician,

1

office manager, telephone salesperson, and project manager. (Doc. 18; Fact Sheet). Plaintiff alleges disability due to degenerative disc disease of the lumbar and cervical spine, arthritis of the knees and hips, depressive disorder, and anxiety disorder with posttraumatic stress disorder. (*Id*). An Administrative Law Judge ("ALJ") denied benefits after determining that Tuner did not meet disability listing requirements; the ALJ further found that Plaintiff was capable of performing light work with some restrictions. (Tr. 26). Plaintiff requested review of the hearing decision but the request was denied by the Appeals Council. (Tr. 1-7).

Plaintiff claims that the ALJ (1) committed reversible error in violation of Social Security Regulations 20 CFR 416.927(d) and Social Security Ruling 96-2 by failing to assign controlling weight to the opinions of Plaintiff's treating physician, Dr. Daniel A. Polansky, M.D., and (2) committed reversible error in violation of Social Security Ruling 96-6p in assigning great weight and relying upon the opinion of consultative orthopedist, Dr. Thomas R. Dempsey, M.D. (Doc. 18 at 1-2). Defendant has responded to—and denies—these claims. (Doc. 19).

## STANDARD OF REVIEW

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam)

2

(internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts."). "In determining whether substantial evidence exists, [a court] must...tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has

an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

Where, as here, the ALJ denied benefits and the Appeals Council denied review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. "[W]hen the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

## DISCUSSION

Turner takes issue with the fact that the ALJ did not give controlling weight to the opinion of Dr. Polansky, Turner's treating physician. (Doc. 18 at 2-6). Plaintiff additionally claims that the ALJ assigned improper weight to the opinion of Dr. Dempsey, a consulting orthopedist. (*Id.* at 6-8). This Court will first address whether the ALJ erred in not assigning Dr. Polansky's opinion controlling weight.

At step four of the sequential evaluation process the ALJ found that Turner had the residual functional capacity to perform light work, except the claimant would be capable of only simple, routine, repetitive tasks involving only simple work related decisions with few workplace changes and that claimant could be capable of occasional interactions with the public, coworkers and supervisors. (Tr. 26).   In reaching this conclusion, the ALJ stated that the:

> [R]esidual functional capacity assessment is supported by the claimant's mild diagnoses of degenerative disc disease and arthritic findings in her hips and knees.  The claimant would be capable of light exertion work based on her September 2014 consultative examination with Dr. Dempsey (Exhibit 12F). Additionally, the claimant should be limited to simple tasks with only occasional interaction with others to accommodate her anxiety disorder and her use of narcotic medications.

(Tr. 32).   As a result, the ALJ concluded that Plaintiff could perform light work and that she was not disabled.  (Tr. 35).  In reaching this conclusion the ALJ summarized Plaintiff's medical records relating to her knees, hips, and back, as follows:

> In terms of the claimant's alleged bilateral knee pain, an October 2009 physical evaluation showed normal knee stability (Exhibit1F/58). In December 2011, Daniel A. Polansky, M.D., the claimant's treating physician, performed a physical examination and found the claimant to have arthritic disease in the knees (Exhibit 11F/15).  In August 2012, Dr. Polansky observed arthritic disease in the knees, and noted that the claimant had neuropathy of the lower extremities (Exhibit 11F/6).  In July 2013, Dr. Polansky noted that the claimant had muscle tone and arthritic joints in the knees with no edema or pulses (Exhibit 2F/3).  However, there are no objective findings to support this notation.  Dr. Polansky also noted that the claimant had inflammatory polyarthritis (Exhibit 2F/2).
>
> At a September 2014 internal consultative examination, Thomas R. Dempsey, M.D. observed the claimant to have normal knee jerk reflexes bilaterally (Exhibit 12F/3-4).  In June 2015, Dr. Polansky continued to diagnose the claimant with arthritic knees (Exhibit 17F/2).
>
> In terms of claimant's alleged hip impairments, in 2005, x-rays of the left hip

showed no evidence of fracture, dislocation, or degenerative process (Exhibit 7F/12). There was evidence of an anterior labrum tear of the left acetabulum, and Michael L. Granberry, M.D. prescribed the claimant anti-inflammatory medication. The claimant also exhibited some pain with internal rotation and flexion past 90 degrees. However, she had good external rotation with no pain, negative straight leg raises, and negative deep tendon reflex testing.

A 2005 MRI of the left hip showed only mild degenerative blunting of the acetabular labrum without frank tear or avulsion (Exhibit 7F/8). In 2009, an x-ray of the left hip showed a small spur of the lateral aspect of the acetabulum (Exhibit 7F/5). An MRI showed no evidence of marrow edema, fracture lines, or avascular necrosis of the left hip, and no abnormal fluid collections or joint effusions with the left hip joint space maintained and symmetric to the right hip (Exhibit 7F/4).

A 2012 MRI of the left hip showed partial tearing or edema within the distal left gluteus medius muscle and tendon with moderate left trochanteric bursitis (Exhibit 1F/40). Additionally, the imaging study showed a small effusion of the left intratrochanteric bursa.

At an internal consultative examination in September 2014, Thomas R. Dempsey, M.D. noted that MRI's of the left hip in 2005 and 2009 showed no significant abnormalities (Exhibit 12F//2). Upon physical examination, Dr. Dempsey observed that claimant had full range of motion without pain in internal or external rotation, flexion, extension, abduction, and adduction bilaterally (Exhibit 12F/3-4). Dr. Dempsey also ordered x-rays of the hips, which showed no obvious abnormalities, and he diagnosed the claimant with hip pain of unknown etiology.

In terms of claimant's spine impairments, a June 2009 MRI of the lumbar spine showed spinal stenosis and degenerative disc disease present at L5-S1 and L4-L5 (Exhibit 1F/56). The imaging study showed moderate to severe foraminal stenosis on the right and mild on the left. A November 2009 MRI of the cervical spine showed mild broad based subligamentous herniation without migration at C6-7 creating mild central canal narrowing and moderate foraminal encroachment bilaterally (Exhibit 1F/44). John P. Couch, M.D. examined the claimant and assessed her with ruled out cervical radiculopathy, cervicalgia, ruled out degeneration of cervical intervertebral disc, ruled out spinal stenosis of the cervical region, ruled out lumbosacral radiculitis, disc disorder of the lumbar region, lumbar facet syndrome, lumbago, muscle spasm, ruled out degeneration of the thoracic intervertebral disc, and pain in the thoracic spine (Exhibit 1F/59).

In April 2010, the claimant saw Dr. Couch for a lumbar epidural steroid

injection with fluoroscopy (Exhibit 1F/11). Dr. Couch diagnosed the claimant with lumbar radiculitis and lumbar degenerative disc disease. In August 2010, Dr. Couch performed and additional lumbar epidural steroid injection to the right L5-S1 (Exhibit 1F/18). In October 2010, Dr. Couch assessed the claimant with thoracic spondylosis (exhibit 1F/69).

In October 2012, Dr. Polansky noted that the claimant had chronic back and leg pain and observed arthritic disease in the spine with point tenderness over the sacroiliac bursa (Exhibit 11F/3). Dr. Polansky diagnosed the claimant with scoliosis, arthritis of the spine, sacroiliac bursitis, and neuropathy of the lower extremities. In July 2013, Dr. Polansky noted that the claimant had arthritis of the spine (Exhibit 2F/2). An x-ray of the cervical spine showed facet joint hypertrophy encroaching on the posterior aspect of the right C3 and right C5 neural foramina, which was not significantly changed from an August 2012 imagining study (Exhibit 2F/10). The x-rays also showed spurring with mild narrowing of the left C7 neural foramen, which was not significantly changed from and August 2012 imaging study. The overall impression was of a stable cervical spine with degenerative changes. X-rays of the lumbar spine showed narrowing at L5-S1 with degenerative endplate spurs, which was stable (Exhibit 2F/10). Additionally the x-rays showed mild sclerosis of the L5-S1 facet joint, but the overall impression [w]as of a stable lumbar spine with degenerative changes.

In January 2014, Dr. Polansky again noted that the claimant had arthritis of the spine (Exhibit 5F/1). In September 2014, Dr. Dempsey performed a consultative examination and observed the claimant to have a full range of motion in the thoracic spine with paraspinal muscle strength within normal limits and no muscle spasms (Exhibit 12F/3). The Claimant's lumbosacral spine showed ten degrees of forward flexion, ten degrees of extension, ten degrees of lateral bending and rotation, no increased kyphosis, scoliosis, or lordosis, and no paraspinal muscle spasms. The claimant's cervical spine showed 20 degrees of forward flexion, 20 degrees of extension, and ten degrees of lateral bending and rotation. Dr. Dempsey also noted that the claimant complained of pain on any touching of the skin on the back or the neck, and assessed the claimaint with low back pain, cervicalgia, pain in thoracic spine, and neck pain (Exhibit 12F/4). Dr. Dempsey diagnosed the claimant with mild degenerative disc disease of the cervical spine with mild foraminal stenosis at C5-C6 and C6-C7, mild lumbar degenerative disc disease, and thoracic pain of an unknown etiology.

(TR. 27-29). The ALJ additionally summarized a clinical pain form completed by Dr.

Polansky as follows:

> In January 2014, Daniel Polansky, M.D. the claimants primary care physician, completed a clinical assessment pain form in which he opined that the claimant's pain was intractable and virtually incapacitating, and that physical activity greatly increased the claimant's pain causing distraction from tasks or total abandonment of tasks for at least two hours in an eight-hour workday (Exhibit 4F/1).  Additionally, Dr. Polansky opined that the claimant['s] pain and/or drug side effects would be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc. (Exhibit 4F/2).  Dr. Polansky opined that the claimant could not sit, stand, bend, or lift to any degree, and stated that the claimant could not engage in any form of gainful employment on a repetitive, competitive and productive basis over an eight-hour workday, forty hours each week.

(Tr. 31).  The ALJ then stated that he gave Dr. Polansky's opinion little weight. (*Id.*)  Plaintiff, however, contends that Dr. Polansky's opinion on the clinical assessment pain form (above) should have been given controlling weight because it was supported by the medical evidence of record.  (Doc. 18 at 3-6).

"In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization.  These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. Sept. 30, 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)).  The Court notes that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the

8

opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[1] *see also* 20 C.F.R. § 404.1527. Regardless, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam).

In the ALJ's opinion, the weight given to Dr. Polansky's opinion was diminished because it was not consistent with the other opinions of record and benign imaging studies. (TR. at 31). More specifically, with regard to Dr. Polansky's opinion that Turner's problems are "virtually incapacitating", the ALJ stated:

> The undersigned has given this opinion little weight because it is entirely inconsistent with the other opinions of record. Additionally, this opinion is inconsistent with the claimant's relatively benign imaging studies of her hips, and only mild diagnoses of her back conditions (Exhibits 7F, 1F/40 and 12F/4). Finally, this opinion is inconsistent with Dr. Dempsey's September 2014 observations that the claimant had normal knee jerk reflexes, and full range of motion without pain on internal and external rotation, flexion, extension, abduction, and adduction of the bilateral hips (Exhibit 12F).

(*Id*.). The ALJ went on to state that Plaintiff's "medical records show only mild findings with conservative treatment. She has not undergone any surgical procedures on her back, knees, or hips, nor has she received formal mental health treatment. […] Additionally, the claimant left her last place of employment because of a performance issue unrelated to her alleged impairments. Most significantly, the claimant's July 2013 x-rays showed stable findings when compared to prior

---

[1] The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

studies, indicating that her condition has not significantly changed since she was working prior to being fired (Exhibit 2F/10). Additionally, 2014 x-rays showed relatively mild findings, indicating that her physical impairments are stable and that she was able to work in the past with the current state of her condition (Exhibit 12F/4)." (Tr. 32). [2]

Despite, Plaintiff's assertions to the contrary, this Court finds that there was substantial evidence that contradicted Dr. Polansky's opinion such that the ALJ did not err by giving his opinion as to Plaintiff's capabilities little weight. Further, the ALJ's explanation specifically articulated the reasoning behind his decision to diminish the weight attributed to Dr. Polansky's opinion, i.e. due to a lack of consistency with other records, benign imaging studies, and the findings of a consultative exam. As such, Plaintiff's assertion that Dr. Polansky's opinion should have been given controlling weight is without merit.

Plaintiff has additionally asserted that the ALJ committed reversible error by assigning great weight to the opinion of consultative orthopedist, Dr. Thomas R. Dempsey. (Doc. 18 at 2, 6-8).[3]

With regard to Dr. Dempsey's opinion, the ALJ stated as follows:

In September 2014, Thomas R. Dempsey, M.D. performed an internal consultative examination in which he opined that the claimant could occasionally lift and carry up to 50 pounds, and continuously lift up to 20 pounds (Exhibit 12F/5). Dr. Dempsey further opined that the claimant could

---

[2] It is additionally worth noting that at her social security hearing, Plaintiff did not testify that she could not work *at all*, only that she had not pursued employment because "everything is a standing position or something along those lines, and I'm just not capable to climb up on anything like that anymore." (TR. 56)
[3] The factors to be considered by the ALJ with regard to the weight given to Dr. Dempsey's opinion are the same as those stated in the analysis of the weight given to Dr. Polansky's opinion.

10

> sit, stand, and walk for eight hours in an eight-hour workday, and would not require a cane to ambulate (Exhibit 12F/6). He noted that the claimant could continuously reach, handle, finger, feel, and push/pull bilaterally, and could climb stairs and ramps frequently, climb ladders or scaffolds occasionally, and balance stoop, knee, crouch, and crawl continuously (Exhibit 12F/8). Finally, Dr. Dempsey opined that the claimant would have no environmental limitations. In a March 2015 letter Dr. Dempsey also stated that the claimant required a significant amount of narcotics and benzodiazepenes for relief of her symptoms, and that she would be limited in bending, lifting, or carrying any significant weight (Exhibit 15F). Dr. Dempsey recommended an expert opinion of her functional status. The undersigned gives Dr. Dempsey's opinion great weight because it is generally consistent with the claimant's benign imaging studies of the hips and back with only mild diagnoses. However, the undersigned has limited the claimant to light exertion to address the claimant's subjective complaints of pain and her use of narcotic pain relievers.

(Tr. 31). Plaintiff contends that Dr. Dempsey's opinion failed to accurately present the medical records that were presented to him and that his opinions are not supported by substantial evidence. (Doc. 18 at 7-8). Namely, Plaintiff contends that Dr. Dempsey incorrectly described a 2009 MRI and failed to reference x-rays done in 2013. (*Id.* at 7). Plaintiff additionally asserts that the results of x-rays and MRIs of Plaintiff's left hip, cervical, lumbar, and thoracic spine do not support Dr. Dempsey's opinion that Plaintiff could sit, stand, and walk for 8-hours at one time for an 8-hour workday. (*Id.* at 8).

While there may be medical records contradicting Dr. Dempsey's opinion, this Court is not free to re-weigh the evidence. *See Bloodsworth,* 703 F.2d at 1239. Rather, this Court must determine whether there was relevant substantial evidence to support the conclusion of the ALJ. In the instant action, the ALJ explicitly stated the weight given to Dr. Dempsey's opinion and articulated the reasoning for the same. Despite the disparities pointed out by Plaintiff, this Court finds that there is

adequate evidence in Plaintiff's medical records and the record as a whole to support Dr. Dempsey's opinion. Moreover, the ALJ further limited Plaintiff based on her subjective complaints and use of pain medicine. As a result, this Court does not find error in the ALJ's assignment of weight to Dr. Dempsey's opinion and finds Plaintiff's claim to be without merit.

## CONCLUSION

Plaintiff has raised two claims in bringing this action; both are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMMISSED**. Judgment will be entered by separate Order.

DONE this 8th day of December, 2016.

>   */s/ Katherine P. Nelson*
>   **KATHERINE P. NELSON**
>   **UNITED STATES MAGISTRATE JUDGE**